

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

November 12, 2025

**BY ECF**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Richard Schneider*, 25 Cr. 275 (AT); 20 Cr. 672 (AT)

Dear Judge Torres:

      The defendant in the above-captioned case, Richard Schneider, is scheduled to be sentenced on November 24, 2025, at 2 pm, after pleading guilty to one count of possession of child pornography and admitting that he violated the terms of his supervised release by failing to truthfully answer inquiries from the U.S. Probation Office about an unmonitored device and by being present in an online chatroom with a self-identified minor.

      For the reasons explained below, the Government submits that the stipulated sentence under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") of 120 months' imprisonment for the defendant's conviction for possession of child pornography, run concurrently with a sentence of 10 months' imprisonment for the defendant's violations of supervised release and followed by a five-year term of supervised release, is appropriate in this case. The recommended sentence is sufficient, but not greater than necessary, to account for the factors set forth in Title 18, United States Code, Section 3553(a).

      **I.**    **Offense Conduct and Procedural History**

      On July 13, 2022, Richard Schneider was convicted of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), in the United States District Court for the Southern District of New York. (Presentence Report ("PSR") ¶ 7). The defendant's underlying offense conduct included, among other things: (i) sending an undercover law enforcement officer ("UC-1") multiple links to thousands of files of child pornography, including material depicting children who appeared to be as young as a few months old up to teenage years; (ii) explaining that the male child, approximately two years old, in one of the photographs the defendant sent to UC-1 was the "nephew of a guy [the defendant] know[s]" and the defendant was "trying to convince [the uncle] to go for it with [the defendant], implying that the defendant was attempting to initiate sexual contact with the child; and (iii) discussing the prospect of engaging UC-1's purported minor stepson in sexual activity and discussing the defendant's previous sexual encounters with minors— all encounters that the defendant claimed, at sentencing, were purely fantasy. (*See* SDNY Case No. 20 Cr. 672, Dkt. 43 at 1-2).

The parties' plea agreement included a stipulated Guidelines range of 97 to 121 months' imprisonment. *See* SDNY Case No. 20 Cr. 672, Dkt. 43 at 1. In its sentencing submission, the Government recommended a significant but below-Guidelines sentence of 36 months' imprisonment, ████████████████████████████████████████████████████████ *Id.* at 5-6. In the final PSR, the Probation Office likewise recommended a sentence of 36 months' imprisonment, including based on weighing the nature and circumstances of the defendant's offense conduct against mitigating factors, including psychosexual evaluations purporting that the defendant had a "low risk of recidivism." (*See* SDNY Case No. 20 Cr. 672, Presentence Report, at pp. 30-31; *see id.* at ¶¶ 60-74, 75).

On July 13, 2022, at the sentencing before the Honorable Paul A. Crotty, the defendant stated: "I'm certainly remorseful about this to the point that I can't even imagine. But as a good Catholic I've been for my entire life, I have to believe there's redemption, that there is a possibility of change after an offense." (*See* SDNY Case No. 20 Cr. 672, Dkt. 54, at 17:16-18:9). The defendant was sentenced by the Honorable Paul A. Crotty to nine months' imprisonment, to be followed by five years of supervised release, and following his conviction, the defendant was required to register as a sex offender. (*Id.*). The defendant surrendered for the sentence on October 11, 2022. (*Id.*).

On May 4, 2023, the defendant was released from prison and entered a residential re-entry center, and on July 7, 2023, the defendant was released from the residential re-entry center and initiated his term of supervised release. (PSR ¶ 8).

Among other conditions of the defendant's supervised release, the defendant was required to: (a) participate in a computer/internet monitoring program administered by the United States Probation Office (the "Probation Office"); (b) provide advance notice to the Probation Office of any computers or devices capable of accessing the internet, so that the Probation Office could install monitoring software; (c) permit the Probation Office to take any items prohibited by the conditions of supervision that the Probation Officer observes in plain view; and (d) refrain from viewing, accessing, possessing, and/or downloading any sexually explicit material involving minors. (PSR ¶ 9).

On July 11, 2023, the defendant met with his supervising United States Probation Officer (the "Probation Officer") at the Probation Office. (PSR ¶ 10). The Probation Officer informed the defendant that he was prohibited from viewing, accessing, possessing, and/or downloading any sexually explicit material involving minors, explained that the purpose of the Probation Office's computer/internet monitoring program was to ensure that the defendant did not recidivate by viewing or possessing child pornography, and indicated that any device that the defendant possessed or intended to purchase required approval by the Probation Office and the installation of monitoring software. (*Id.*).

The Probation Officer asked the defendant for the passwords to any devices in the defendant's possession, and the defendant provided the Probation Officer with the password to a Motorola Cellphone (the "Schneider Cellphone") and the password to an Apple iPad Pro (the "Schneider iPad"). (PSR ¶ 11). The Probation Officer informed the defendant that monitoring software would be installed on his devices on July 26, 2023. (*Id.*).

On July 14, 2023, the defendant sent the Probation Officer a text message reporting that he sold the Schneider iPad to "some guy on Craigslist" because the defendant needed the money. (PSR ¶ 12). The Probation Officer directed the defendant to provide the transaction details. (*Id.*).

On July 17, 2023, the defendant sent the Probation Officer the following text message: "Good morning . . .you seemed peeved I sold the iPad so I returned the $ and getting it back tomorrow." (PSR ¶ 13). The Probation Officer again directed the defendant to provide the transaction details and told the defendant that he did not need to undo the transaction. (*Id.*).

On July 18, 2023, the Probation Officer conducted an unscheduled visit to the defendant's Manhattan residence. (PSR ¶ 14). The Probation Officer observed the Schneider iPad in plain view, charging on the nightstand in the defendant's bedroom, and the defendant identified the Schneider iPad as the one he purportedly sold. (*Id.*). When the Probation Officer asked to review the Schneider iPad, the defendant entered the same password he provided to the Probation Officer on July 11, 2023. (*Id.*). The Probation Officer opened the photo application on the Schneider iPad and observed images of sexually explicit conduct. (*Id.*).

The Probation Officer asked the defendant to unlock the Schneider Cellphone, which he did. (PSR ¶ 15). While reviewing the Schneider Cellphone, the Probation Officer saw that the defendant's recent internet search history appeared to reflect searches for sexually explicit conduct. (*Id.*).

The Probation Officer informed the defendant that possessing unmonitored devices constituted violations of his conditions of supervised release and seized the Schneider iPad and the Schneider Cellphone at that time. (PSR ¶ 16).

A forensic review of the Schneider Cellphone and the Schneider iPad by the Federal Bureau of Investigation revealed that images and videos of child sexual abuse material, including minors appearing to be as young as a few months old, were downloaded to the devices. (PSR ¶ 17). The files on the Schneider Cellphone appeared to have a "last write time" between July 1, 2023, and July 4, 2023, indicating that the files had last been downloaded and accessed between those dates—meaning, before the defendant was released from the residential re-entry center and before he initiated his term of supervised release. (*Id.*).

The defendant possessed 96 unique images of child sexual abuse material on the Schneider Cellphone. (PSR ¶ 18). The images depicted children, including those who appeared to be as young as a few months old up to teenage years, engaged in sexual activity with other children and adults. (Id.). Examples of the images that the defendant possessed include:

- A photograph depicting an adult male nude from the waist down kneeling on a bed in front of a fully nude male toddler. The toddler is lying on his back. The adult male is holding his erect penis and pushing the erect penis into the anus of the toddler. (*Id.*).

- A photograph depicting an adult erect penis being forced into the mouth of an infant. (*Id.*).

In addition, the Schneider Cellphone included several saved Mega[1] links. (PSR ¶ 19). One of the links contained approximately 105 files of child sexual abuse material that the defendant emailed to himself. (*Id*.). All of the files were videos ranging from two seconds to 42 minutes in length and at least five of the videos were over five minutes long. (*Id*.). The child sexual abuse material depicted children, including those who appear to be as young as a few weeks old. (*Id*.).

The defendant possessed four videos of child sexual abuse material on the Schneider iPad. (PSR ¶ 20). The videos depicted children, including those who appeared to be between the approximate ages of three and nine years old, engaged in sexual activity with other children and adults. (*Id*.). In addition, the Schneider iPad contained multiple chats in which the defendant engaged in discussions about sexually exploiting children, including as follows:

- On July 27, 2022, the defendant exchanged messages with "Greg," in which the defendant sent Greg a video of child sexual abuse material depicting a male, approximately nine years old, engaging an adult male in oral sex. (*Id.*).

- On October 2, 2022, the defendant exchanged messages with "Matt," in which the defendant sent Matt a video of child sexual abuse material depicting an adult male engaging another male, approximately three years old, in anal sex. The adult male then ejaculates on the child. (*Id.*).

- On July 11, 2023, the defendant exchanged messages with "Pee" and discussed the sexual exploitation of children. The defendant sent "Pee" a Mega link that contained approximately 105 videos of child sexual abuse material involving children who appeared to be as young as a few weeks old. (*Id.*).

The defendant's internet search history indicated searches for certain terms, including "legality of child pornography," "mega," "Dad son taboo," "DS incest," "#perv," "how to breed a boy gay porn," as well as certain other searches, including one regarding countries to live in as a child sex offender. (PSR ¶ 21).

On July 25, 2023, the Probation Office submitted a violation report alleging two specifications (the "Violation Report"): Specification One alleged that on or about July 18, 2023, the defendant failed to truthfully answer inquiries from the Probation Officer, namely by falsely reporting that he had sold the Schneider iPad; and Specification Two alleged that on or about July 18, 2023, the defendant associated with a minor, in that he was in a chatroom with an individual who self-identified as being sixteen years old. (PSR ¶ 47).

On August 29, 2023, the defendant was charged by complaint with one count of receipt of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(B) and (b)(1), and one count of possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2) (the "Complaint"). (Dkt. No. 1). The defendant was arrested on August 30, 2023, was presented before the Honorable Robert W. Lehrburger on the Complaint the same day, and was detained following a detention hearing. (PSR ¶ 22; *see also* Dkt. 4).

---

[1] Mega is a cloud storage and file sharing service.

On August 30, 2023, the Probation Office submitted an amended violation report alleging two additional specifications (the "Amended Violation Report"): Specification Three alleged that in or around July 2023, the defendant committed a federal crime, namely receipt and distribution of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(B) and (b)(1); and Specification Four alleged that in or around July 2023, the defendant committed a federal crime, namely possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2). (PSR ¶ 47).

On June 16, 2025, the defendant appeared before this Court and pled guilty to a one-count Information charging him with one count of possession of child pornography. (Dkt. Nos. 52, 56). That count carries a 120-month mandatory minimum term of imprisonment, in light of the defendant's prior conviction. The defendant pled guilty pursuant to a plea agreement. As set out in the plea agreement, based on the defendant's offense conduct and his criminal history score, the defendant's Guidelines range was calculated as 87 to 108 months' imprisonment. However, in light of the mandatory minimum term of 120 months' imprisonment, the defendant's stipulated, adjusted Guidelines sentence is 120 months' imprisonment.

On October 6, 2025, the defendant admitted to Specifications One and Two in the Amended Violation Report.

On September 8, 2025, the Probation Department issued its final PSR. Consistent with the parties' plea agreement, the PSR determined that the defendant's criminal history category is II based on two criminal history points. However, while the parties' plea agreement calculated a total offense level of 28, the PSR included an additional Guidelines enhancement under Section 2G2.2(b)(3)(F), because on or about July 11, 2023, the defendant knowingly engaged in distribution of child sexual abuse material involving children who appeared to be as young as a few weeks old. (PSR ¶¶ 20(iii), 33, 110). Thus, the PSR calculated the defendant's total offense level as 30, which resulted in a Guidelines range of 108 to 135 months, with a statutorily required minimum sentence of 120 months' imprisonment. (PSR ¶¶ 44, 107, 109, 110). Probation recommends a sentence of 120 months' imprisonment, to run consecutive to the sentence imposed for the defendant's violations of supervised release in SDNY Case No. 20 Cr. 672. (PSR pp. 34, 35, 37).

### II.    Victim Impact

The Court has been provided with statements from identified victims and from victims' family members.[2] Those statements detail the continuing trauma that the victims face knowing that images reflecting their abuse as children are online and being shared and viewed by perpetrators for their own pleasure. The victims detail their feelings of powerlessness and the feelings of re-victimization that they experience every time someone new views their images of abuse online. Some of the statements are reproduced, quoted, or summarized in part below:

---

[2] The Government respectfully requests that Exhibits 1 through 5 attached hereto (victim impact statements) be filed under seal due to the sensitive and personal nature of the information contained therein, including information about abuse the victims suffered as children. *See Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 256 (S.D.N.Y.), *aff'd*, 578 F. App'x 24 (2d Cir. 2014) (sealing documents that contain "sensitive and personal information about the sexual abuse of a minor").



### III. The Court Should Impose a 120-Month Sentence for the Defendant's Criminal Conviction

#### A. Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005).  As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range

itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. Discussion

In this case, a sentence of 120 months' imprisonment for the defendant's criminal case is warranted in light of the Section 3553(a) factors. In particular, such a sentence is appropriate in light of the need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law; to afford adequate specific and general deterrence; and to protect the public from further crimes of the defendant.

*First*, a sentence of 120 months is appropriate in light of the nature and circumstances of the offense. The offense to which the defendant pleaded guilty is extremely serious. The defendant downloaded a large number of images and videos of child sexual abuse for his own pleasure, apparently without regard for the victims whose childhood abuse is displayed in those videos and images. As the Second Circuit has noted:

> there can be no question that the dissemination of child pornography is a serious crime that causes real injury to particularly vulnerable victims. As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed— physically, emotionally, and mentally—in the process of producing such pornography, but that harm is the exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse.

*United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013); *see also New York v. Ferber*, 458 U.S. 747, 757-59 & nn. 9-10 (1982) (citing congressional and scholarly reports, and court cases). It is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes

a government objective of surpassing importance," *Ferber*, 458 U.S. at 757, and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, *see Osborne v. Ohio*, 495 U.S. 103, 110 (1990).

The harm to the children in these videos and images is immeasurable. As detailed in the victim impact statements, the victims are forced to relive their abuse on a regular basis knowing that individuals like the defendant are using images of their abuse for their own pleasure. These victims suffer new fear, humiliation, and feelings of hopelessness every time they learn of a person who has witnessed and downloaded their abuse online. The feelings of fear and embarrassment prevent them from engaging in many of the activities that others take for granted, such as meeting new people, engaging in relationships, and participating fully in everyday life, including due to the distrust of others that stems from the callousness with which images of their child abuse have been shared and viewed by others online.

The defendant's possession of such images not only causes harm to the children in these videos and images. Such possession also fuels and fosters the market for more abuse. *See Paroline v. United States*, 572 U.S. 434, 456 (2014) (finding that harm to a child pornography victim is caused by "the trade in her images," and that a defendant who possessed such images "is a part of that cause, for he is one of those who viewed her images."); *United States v. Johnson*, 221 F.3d 83, 98 (2d Cir. 2000) ("Such dissemination of child pornography is likely to expand the market for it and thus to cause more harm than mere possession."); *United States v. Cabrera*, 19 Cr. 294 (WFK), 2023 WL 3571217, at *4 (E.D.N.Y. May 19, 2023) ("Defendant's and others' possession of videos and images of child sexual abuse necessarily fuels and fosters the market for these obscene material.").

The types of images and videos that the defendant possessed here are particularly egregious depictions of sexual abuse of very young children. As described in the PSR, and reflected in the Guidelines, some of the images and videos that the defendant possessed showed sexual force—including anal and oral penetration—by adults of extremely young and vulnerable children, including children as young as just a few weeks old.

*Second*, in addition to the nature and seriousness of the offense, a substantial sentence of imprisonment is necessary to deter the defendant from future child exploitation offenses and protect the public from any future crimes by the defendant. As the Probation Office aptly noted:

> For the defendant to be . . . before the Court . . . for the possession of child pornography after his prior conviction for the same conduct is extremely concerning. Schneider, who received a significant variance from the advisory guideline range during his prior sentencing for the same conduct, resumed his criminal conduct almost immediately after being released from the Bureau of Prisons despite knowing that he was under a term of supervised release. The defendant's short-term period of imprisonment [of 9 months] did not deter his conduct. He sustained multiple disciplinary infractions during his prior term of imprisonment despite being in custody for less than one year [(*see* PSR ¶ 47)] and has four disciplinary infractions to date during his current term [*see* Amended Violation Report]. His conduct combined with the details of his prior offense and attempt to get rid of his electronic devices are aggravating factors that highlight the

need for the sentence imposed to incapacitate the defendant and protect the community.

(PSR p. 35).

The defendant's commission of an extremely serious offense immediately after he was released from a term of prison for committing the exact same serious offense reveals the real danger that the defendant poses to the community. Worse still, for his prior offense, the defendant received an extremely lenient sentence—of 9 months' imprisonment compared with a Guidelines range of 97 to 121 months' imprisonment—and wholly squandered it by re-offending in the exact same manner, yet again. And, the defendant committed the instant offense *before* he even commenced supervised release—by downloading at least 96 unique images of child sexual abuse material on the Schneider Cellphone while residing in a residential re-entry center. (PSR ¶¶ 17-18). Furthermore, while a 2022 psychosexual evaluation of the defendant determined that the defendant's risk of re-offending by committing another child pornography-related offense was low (PSR ¶¶ 78, 80), that assessment is directly controverted by the defendant's conduct in this case—which suggests that there is a clear and substantial need to deter the defendant from continuing to engage in child exploitation offenses.

*Third*, a sentence of 120 months' imprisonment is warranted to afford adequate general deterrence. Such a sentence sends an appropriate message that repeated criminal conduct, including offenses involving the exploitation of minors, will be met with commensurate punishment.

*Finally*, while the seriousness of the defendant's offense, the need for adequate deterrence, and the need to protect the public all weigh in favor of a very substantial term of imprisonment, there are also important mitigating factors that the Government recognizes. Specifically, as the defense has detailed in its submission, ███████████████████████████████████████████████████████████████████████████████ and only attended a few sex offender treatment sessions before his re-arrest in this case. *See id.* at 6. In addition, the defendant did not produce the images at issue in this case and has never attempted to meet an actual minor or commit a contact offense. *Id.* at 8. ███

In sum, based on the specific facts of this case, the Government believes that a sentence of 120 months' imprisonment, followed by a five-year term of supervised release, would adequately balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

### IV. The Court Should Impose a 10-Month Sentence for the Defendant's Violations of Supervised Release

#### A. Applicable Law

"[A] sentence for a violation of supervised release should primarily sanction the defendant's 'breach of trust,' not the conduct constituting the violation itself." *United States v. Ramos*, 979 F.3d 994, 1002 (2d Cir. 2020) (quoting *United States v. Edwards*, 834 F.3d 180, 194 (2d Cir. 2016)). In fashioning an appropriate sentence for a violation of supervised release, the

court must "consider a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a)," which are set out in 18 U.S.C. § 3583(e). *United States v. Dowdell*, No. 20-4094, 2021 WL 5170728, at *2 (2d Cir. Nov. 8, 2021). Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" 18 U.S.C. § 3553(a)(1); (2) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct;" *id*. § 3553(a)(2)(B); and (3) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant;" *id*. § 3553(a)(2)(C); *see* 18 U.S.C. § 3583(e).

Furthermore, "[i]n imposing a sentence for violation of supervised release, the sentencing judge may freely impose a term lower or higher than the recommended Guidelines range, but must start with a legally correct interpretation of the Guidelines." *Ramos*, 979 F.3d at 999. Here, as detailed in the Amended Violation Report, the Guidelines range for the defendant's violation of Specifications One and Two is 3 to 9 months' imprisonment. (*See* Amended Violation Report at 4). The Probation Office recommends a sentence of 10 months' imprisonment, followed by five years' supervised release. (*Id*.).

### B. Discussion

Here, a sentence of 10 months' imprisonment, as recommended by the Probation Office, is appropriate to sanction the defendant for the serious breaches of trust he committed by failing to truthfully answer inquiries from the U.S. Probation Office and by associating with a minor in an online chatroom. Two key aspects of the defendant's supervised release were (i) participating in a computer/internet monitoring program administered by Probation; and (ii) refraining from viewing, accessing, possessing, and/or downloading any sexually explicit material involving minors. (PSR ¶ 9). As was explained to the defendant at the commencement of his supervised release term, the purpose of the computer/internet monitoring program and these conditions was to ensure that the defendant did not recidivate by viewing or possessing child pornography. (*Id*. ¶ 10). The defendant, however, openly flouted these important conditions by lying about an unmonitored device in his possession and by using that unmonitored device to be present in an online chatroom at the same time as a self-identified minor. (*Id*. ¶ 47; *see also* Amended Violation Report at 3, 5). The defendant's dishonesty with the Court and the Probation Office is a separate harm, apart from the defendant's underlying criminal conduct, and is conduct that should be appropriately sanctioned.

The Government believes that a sentence of 10 months' imprisonment, to run concurrent to any sentence imposed for the defendant's conviction for possession of child pornography, is appropriate to reflect the serious nature of his breaches of trust and to deter the defendant from similar violations in the future.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: _____
Diarra M. Guthrie
Assistant United States Attorneys
(212) 637-2463

cc: Michael Arthus, Esq. (via ECF)